UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIGRAN KHACHATRYAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>　　　　Defendant. | Case No. 25-cv-02749-DMR<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 16 |

Plaintiff Tigran Khachatryan brings this complaint against Defendant Mercedes-Benz USA, LLC ("MBUSA") asserting violations of the Song-Beverly Consumer Warranty Act ("the Song-Beverly Act"), Civil Code sections 1790 *et seq.* [Docket No. 6-1, ECF 6 (Compl.).] MBUSA now moves to compel Plaintiff to arbitration. [Docket Nos. 16 (Mot.); 20 (Reply)[1].] Plaintiff opposes. [Docket No. 19 (Opp'n).] This motion is suitable for determination without oral argument pursuant to Civil L.R. 7-1(b).

For the reasons stated below, the motion is GRANTED.

**I.　BACKGROUND**

　　**A.　Allegations and Procedural History**

The following are allegations in the complaint. On July 25, 2024, Plaintiff leased a 2024 Mercedes-Benz EQS 45 bearing VIN No.: 4JGDM2EBXRA032601 ("Subject Vehicle") from Mercedes Benz of Walnut Creek, for a total of $44,072.60. Compl. ¶ 2. In connection with Plaintiff's lease of the vehicle, MBUSA (and not the selling dealership) issued a written warranty. *Id.* MBUSA warranted the Subject Vehicle and agreed to preserve or maintain the utility or performance of Plaintiff's vehicle or to provide compensation if there was a failure in such utility

---

[1] MBUSA appears to have filed a duplicate Reply as Docket No. 21. The court does not consider the duplicate.

or performance. *Id.* ¶ 3. The Subject Vehicle was delivered to Plaintiff with serious defects and noncomformities to warranty. *Id.* ¶ 4. Despite Plaintiff's repeated attempts to repair the Subject Vehicle, it was not successfully repaired. *Id.* ¶¶ 5-11. Plaintiff alleges that MBUSA refused to repurchase the Subject Vehicle in violation of the Song-Beverly Act. *Id.* ¶¶ 12-14.

Plaintiff brought this case in Contra Costa Superior Court on February 10, 2025. [Docket No. 6 (Removal Notice).] The case was timely removed to this court on March 27, 2025 based on diversity jurisdiction. *Id.* Plaintiff brings three claims under the Song-Beverly Act against MBUSA: breach of express warranty, breach of implied warranty, and failure to comply with the repair service requirements of the Song-Beverly Act section 1793.2(b).

**B.     The Arbitration Agreement**

MBUSA argues that this case is subject to the arbitration provision in the Motor Vehicle Lease Agreement, which Plaintiff signed when Plaintiff leased the Subject Vehicle. [Docket Nos. 16-1 (Ali Ameripour Decl., June 25, 2025) ¶ 4; 16-3 (Lease Agmt.).] The Lease Agreement includes a provision defining terms, which states:

> Unless otherwise specified, "lease" refers to this Motor Vehicle Agreement; "vehicle" refers to the vehicle described below; "you," "your," and "yours" refers to the Lessee and any Co-Lessee; "we," "us," and "our" refer to the Lessor and, after the lease is assigned, to Mercedes-Benz Vehicle Trust, or its successors or assigns; "Assignee" refers to the Mercedes-Benz Vehicle Trust or its successors and assigns. . . . You agree to lease the vehicle from us on the terms and conditions provided for in this lease. The Terms and conditions contained in this lease are made on behalf of the Lessor and Assignee.

Lease Agmt. 1. The Lease Agreement includes a provision titled "Consumer Leasing Act Disclosures." Section 15 of the provision discusses warranty:

> **New and Pre-owned Vehicle Warranty**. If the vehicle is new, it is covered by a standard new vehicle warranty from the manufacturer. If the vehicle is pre-owned, it is not covered by a warranty unless indicated [below]. . . . We assign to you all rights we have under any of these warranties. You acknowledge that you have a received a copy of the indicated warranties. **We lease the vehicle to you "AS IS". EXCEPT AS EXPRESSLY PROVIDED UNDER THIS LEASE, AND UNLESS PROHIBITED BY LAW, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE'S (OR ANY PART OR ACCESSORY THEREOF) CONDITION, MERCHANTIABLITY, OR FITNESS FOR ANY**

2

>    **PARTICULAR PURPOSE; AND WE MAKE NO OTHER REPRESENTATION OR WARRANTY WHATSOEVER.**

Lease Agmt. 3-4 (emphasis in original). The Lease Agreement also includes a provision titled "Important Arbitration Disclosures," which states:

> Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this lease, arbitration section or the arbitrability of any issue), between you and us or any of our employees, agents, successors, assigns, or the vehicle distributor, including Mercedes-Benz USA LLC (each a "Third-Party Beneficiary"), which arises out of or relates to a credit application, this lease, or any resulting transaction or relationship arising out of this lease (including any such relationship with third parties who do not sign this contract) shall, at the election of either you, us, or a Third-Party Beneficiary, be resolved by a neutral, binding arbitration and not by a court action.

Lease Agmt. 4.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms" by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) and 9 U.S.C. § 4). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

A purported arbitration agreement presents three "gateway" issues: (1) "whether an agreement to arbitrate was actually formed," (2) "whether that agreement is 'valid,' in other words, whether there are any defenses," and (3) "whether the agreement encompasses the dispute at issue." *Davenport v. Nvidia Corp.*, 719 F. Supp. 3d 1019, 1025 (N.D. Cal. 2024) (quoting *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634-35 (9th Cir. 2021) and *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023)). While gateway questions are typically

resolved by a court, "some 'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement." *Ahlstrom*, 21 F.4th at 634. However, "parties cannot delegate issues of formation to the arbitrator." *Id.* at 635.

In resolving motions to compel arbitration, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). In addition, federal courts apply state-law principles of contract. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). The parties do not dispute that California law applies. Mot. 12; Opp'n 10.

## III.   DISCUSSION

The sole dispute in this motion is whether MBUSA, a non-signatory to the Lease Agreement, may enforce the arbitration agreement in the Lease Agreement against Plaintiff. MBUSA argues that it may enforce the arbitration agreement as a third-party beneficiary or through equitable estoppel. Plaintiff opposes.

### A.   Third-Party Beneficiary

Generally, the right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). In some circumstances, however, "nonsignatories can enforce arbitration agreements as third party beneficiaries." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *see* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."). In order to compel arbitration as an intended third-party beneficiary, the nonsignatory must show that "the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175

4

(9th Cir. 2000). By contrast, an incidental beneficiary of an agreement "acquires no right" against the parties to that agreement. *Id.* at 1211 n.2 (internal quotation marks omitted) (quoting Restatement (Second) of Contracts § 315). The nonsignatory bears the burden of proving that it is an intended third-party beneficiary. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).

Under California law, for a nonsignatory to enforce a contract, it must show 1) that it would in fact benefit from the contract; 2) a motivating purpose of the contracting parties was to provide a benefit to the third party; and 3) permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 829-30 (2019). The court examines both the express provisions of the contract at issue and all of the relevant circumstances under which the contract was agreed to. *Id.*

MBUSA argues that it is a beneficiary of the contract because it was expressly included in the arbitration provision as a third-party beneficiary. *See* Lease Agmt. 4. Plaintiff argues that MBUSA is not a beneficiary because MBUSA's warranty obligations preexisted and are independent of the Lease Agreement. Opp'n 12-13. The court is not persuaded by Plaintiff's argument. The Lease Agreement clearly names MBUSA as a "Third-Party Beneficiary" and expressly endows MBUSA with the right to compel arbitration of any claim or dispute "which arises out of or relates to" any "resulting transaction or relationship arising out of this lease (including any such relationship with third parties who do not sign this contract)." Lease Agmt. 4. Plaintiff appears to suggest that MBUSA has no right to compel arbitration because its warranty obligations do not "arise out of" the Lease Agreement. To support their argument, Plaintiff points to the "Consumer Leasing Act Disclosures" provision of the Lease Agreement, which states that new vehicles are covered by a separate warranty from the manufacturer, and the dealership assigns that existing warranty to Plaintiff. *Id.* at 3-4. Plaintiff argues that MBUSA is the distributor, not the manufacturer, and there is no mention in the Lease Agreement of a warranty relationship being formed between Plaintiff and MBUSA through the lease. Opp'n 8-9, 13. Plaintiff fails to explain why warranty obligations must be explicitly included in the Lease Agreement for a warranty dispute to be arbitrable. All that is required under the arbitration provision is that the dispute

5

1  "arises out of" or relates to a relationship "arising out of" the lease.  Courts in this district have

2  held that warranty disputes with the vehicle distributor are encompassed by this language.  *See,*

3  *e.g., Durkin v. Mercedes-Benz USA, LLC*, No. 25-cv-03064-WHO (N.D. Cal.), Dkt. No. 23

4  (finding that identical language in a lease agreement included warranty disputes with the vehicle

5  distributor in the scope of the arbitration provision); *Smallheiser v. Mercedes-Benz USA, LLC,* No.

6  3:24-cv-00219-JD (N.D. Cal.), Dkt. No. 26 (same).  To the extent that the parties dispute the scope

7  of the arbitration provision, the arbitration provision includes a delegation clause which assigns

8  that dispute to the arbitrator.  Lease Agmt. 4.  Plaintiff did not challenge the delegation clause.

9        The court finds that MBUSA would in fact receive a benefit from the contract.  The

10 contract expressly grants MBUSA the power to compel Plaintiff to arbitration under certain

11 circumstances.  This case is distinguishable from cases cited by Plaintiff where the movant was

12 not a named third-party beneficiary.  *See, e.g., Schulz v. BMW of N. Am., LLC*, No. 5:20-CV-

13 01697-NC, 2020 WL 4012745, at *5 (N.D. Cal. July 15, 2020) ("the [arbitration] provision

14 expressly limits application to disputes between [the plaintiff] and the dealership or its 'employee,

15 agents, successors, or assigns'"); *Nation v. BMW of North America, LLC*, No. 2:20-cv-02709-

16 JWH, 2020 WL 7868103 at * 3 (C.D. Dec. 28, 2020) ("BMW NA is *not* included in the class of

17 litigants who may compel arbitration"); *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir.

18 2022) ("the arbitration clause expressly states that only three parties—[the plaintiff], the

19 dealership, and the assignee—may compel arbitration").  Unlike in those cases, MBUSA is

20 expressly named and expressly benefits from the arbitration provision of the Lease Agreement.

21       For the same reason, the court finds that a motivating purpose of the contracting parties

22 was to provide a benefit to MBUSA, and permitting MBUSA to enforce the arbitration provision

23 is consistent with the objectives of the contract and the reasonable expectations of the contracting

24 parties.  *Goonewardene*, 6 Cal. 5th at 829-30.  The manifest intent of the arbitration provision, as

25 clearly stated in the plain language of the contract, was to include MBUSA as a third-party

26 beneficiary who could compel arbitration for disputes between MBUSA and Plaintiff arising out

27 of the lease.  Lease Agmt. 4.  Plaintiff argues that the definition provision in the Lease Agreement

28 make this intent ambiguous, because the definitions of "you," "us," and "Assignee" do not include

6

1  MBUSA.  Lease Agmt. 1.  Those definitions are irrelevant.  The arbitration provision

2  encompasses "you and us . . . *or the vehicle distributor, including Mercedes-Benz USA LLC.*"  *Id.*

3  at 4 (emphasis added).  Nothing in the definition provision prohibits the parties from granting

4  nonsignatories like MBUSA the power to compel arbitration.

5        Finally, Plaintiff argues that permitting MBUSA to enforce the clause would be

6  inconsistent "with the objectives of the contract" and the "reasonable expectations of the

7  contracting parties," because the objective of the lease was to finance the Subject Vehicle and to

8  compel arbitration for claims emanating from the financing of the Subject Vehicle.  Opp'n 14.

9  Plaintiff argues that permitting MBUSA to take advantage of the arbitration clause would not

10  "effectuate" either of those objectives.  *Id.*  As stated above, this court joins other courts in this

11  district that have found that warranty disputes with the vehicle distributor are precisely the sort of

12  claims that are contemplated by the language of this arbitration provision and that are within the

13  reasonable expectations of the parties.

14        *Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324 (2023), *aff'd,* 17 Cal. 5th 1122 (2025)

15  cuts against Plaintiff's arguments on this issue.  *Ford Motor Warranty* held that the defendant

16  FMC was not a third-party beneficiary of the sale contract because it was not included in the

17  contract's arbitration provision.  *Id.* at 1338.  The court noted that, "[i]f the signatories had

18  intended to benefit FMC, such a purpose would have been easy to articulate.  They could have

19  simply named FMC—directly or by class as the vehicle's manufacturer—as a person entitled to

20  compel arbitration."  *Id.* at 1339.  That is precisely what the signatories did here in naming

21  MBUSA as a person entitled to compel arbitration.  MBUSA has met the three *Goonewardene*

22  requirements.

23        The court finds that MBUSA is an expressly named third-party beneficiary who can

24  enforce the arbitration provision of the Lease Agreement.  As such, the court need not reach the

25  parties' arguments about equitable estoppel.

26        **B.**    **Stay**

27        "When a district court finds that a lawsuit involves an arbitrable dispute, and a party

28  requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."

7

*Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). MBUSA requests a stay. Mot. 16. Accordingly, the court stays this suit pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, the court grants MBUSA's motion to compel arbitration and stays this suit pending arbitration. The motion hearing and the Initial Case Management Conference set for September 11, 2025 are vacated. For case management purposes, the court implements the stay by administratively closing the case. The parties shall file a joint status report within 30 days of a final arbitration order. Filing the status report will lift the stay by reactivating the case.

**IT IS SO ORDERED.**

Dated: September 8, 2025

_____
Donna M. Ryu
Chief Magistrate Judge